MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
DONAL MAGALIEL PEREZ MOLINA,
FELIPE FLORES NICOLAS, JESUS
ORELLANA, JULIO PENARANDA
ASTUDILLO, MARCO ANTONIO
SALVADOR BERNARDINO, and
SEGUNDO CARLOS PALA YUICELA,
*individually and on behalf of others similarly
situated,*

         *Plaintiffs,*

     -against-

SKYLINE RESTORATION INC.  (D/B/A
SKYLINE RESTORATION), JOHN
KALAFATIS, VASILIOS PIERRAKEAS,
RONALD DUARTE, and ERIC DOE,

         *Defendants.*
-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

Plaintiffs Donal Magaliel Perez Molina, Felipe Flores Nicolas, Jesus Orellana , Julio

Penaranda Astudillo, Marco Antonio Salvador Bernardino, and Segundo Carlos Pala Yuicela ,

individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through

their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as

against Skyline Restoration Inc. (d/b/a Skyline Restoration), ("Defendant Corporation"), John

Kalafatis,  Vasilios Pierrakeas,  Ronald Duarte, and  Eric Doe, ("Individual Defendants"),

(collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Skyline Restoration Inc. (d/b/a Skyline Restoration), John Kalafatis, Vasilios Pierrakeas, Ronald Duarte, and Eric Doe.

2.      Defendants own, operate, or control a construction company, located at 49-28 31st Pl, Long Island City, NY 11101-3100 under the name "Skyline Restoration".

3.      Upon information and belief, individual Defendants John Kalafatis, Vasilios Pierrakeas, Ronald Duarte, and Eric Doe, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the construction corporation as a joint or unified enterprise.

4.      Plaintiffs were employed as  construction laborers, brick layer workers, demolition workers, cement layer workers, and scaffold workers at the construction corporation's projects located mostly at various locations in Manhattan.

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

8.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

9.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without

providing the minimum wage and overtime compensation required by federal and state law and regulations.

10.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

11.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

13.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district and Defendants operate a construction company most of whose projects are located in this district. Further, Plaintiffs were employed by Defendants mostly in this district.

## PARTIES

*Plaintiffs*

14.    Plaintiff Donal Magaliel Perez Molina ("Plaintiff Perez" or "Mr. Perez") is an adult individual residing in Kings County, New York.

15.     Plaintiff Perez was employed by Defendants at Skyline Restoration from approximately July 15, 2019 until on or about August 30, 2019.

16.     Defendants directed Plaintiff Perez to work in, but not limited to, 750 Park Avenue, New York, NY 10021 and a work site on the location of Lexington and 1st avenue.

17.     Plaintiff Felipe Flores Nicolas ("Plaintiff Flores" or "Mr. Flores") is an adult individual residing in Bronx County, New York.

18.     Plaintiff Flores was employed by Defendants at Skyline Restoration from approximately August 8, 2019 until on or about August 30, 2019.

19.     Defendants directed Plaintiff Flores to work in, but not limited to, 750 Park Avenue, New York, NY 10021 and a work site located in 21-66 33 Road BLDG 5, Astoria, Queens.

20.     Plaintiff Jesus Orellana ("Plaintiff Orellana" or "Mr. Orellana") is an adult individual residing in Kings County, New York.

21.     Plaintiff Orellana was employed by Defendants at Skyline Restoration from approximately July 2019 until on or about September 28, 2019.

22.     Defendants directed Plaintiff Orellana to work in, but not limited to, 750 Park Avenue, New York, NY 10021.

23.     Plaintiff Julio Penaranda Astudillo ("Plaintiff Penaranda" or "Mr. Penaranda") is an adult individual residing in Essex County, New Jersey.

24.     Plaintiff Penaranda was employed by Defendants at Skyline Restoration from approximately August 2019 until on or about September 27, 2019.

25.     Defendants directed Plaintiff Penaranda to work in, but not limited to, 750 Park Avenue, New York, NY 10021.

26.    Plaintiff Marco Antonio Salvador Bernardino ("Plaintiff Salvador" or "Mr. Salvador") is an adult individual residing in Kings County, New York.

27.    Plaintiff Salvador was employed by Defendants at Skyline Restoration from approximately June 2019 until on or about September 19, 2019.

28.    Defendants directed Plaintiff Salvador to work in, but not limited to, 750 Park Avenue, New York, NY 10021 and a work site located on 60th Street in 502 Park Avenue.

29.    Plaintiff Segundo Carlos Pala Yuicela ("Plaintiff Pala" or "Mr. Pala") is an adult individual residing in New York County, New York.

30.    Plaintiff Pala was employed by Defendants at Skyline Restoration from approximately August 4, 2019 until on or about September 6, 2019.

31.    Defendants directed Plaintiff Pala to work in, but not limited to, 750 Park Avenue, New York, NY 10021 and a work site on the located on 618 west 177 street, New York, NY, 10033, and 21-66 33rd Rd, Astoria, NY 11106.

*Defendants*

32.    At all relevant times, Defendants owned, operated, or controlled a construction company, located at 49-28 31st Pl, Long Island City, NY 11101-3100 under the name "Skyline Restoration".

33.    Upon information and belief, Skyline Restoration Inc. (d/b/a Skyline Restoration) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 49-28 31st Pl, Long Island City, NY 11101-3100.

34.    Defendant John Kalafatis is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant John Kalafatis is sued individually

in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant John Kalafatis possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

35.    Defendant Vasilios Pierrakeas is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Vasilios Pierrakeas is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Vasilios Pierrakeas possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

36.    Defendant Ronald Duarte is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Ronald Duarte is sued individually in his capacity as a manager of Defendant Corporation. Defendant Ronald Duarte possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

37.    Defendant Eric Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Eric Doe is sued individually in his capacity as a manager of Defendant Corporation. Defendant Eric Doe possesses operational control

over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

38.    Defendants operate a construction company located in the Long Island City section of Queens in New York City which performs construction projects mostly in Manhattan.

39.    Individual Defendants, John Kalafatis, Vasilios Pierrakeas, Ronald Duarte, and Eric Doe, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

40.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

41.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

42.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

43.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

44.    Upon information and belief, Individual Defendants John Kalafatis and Vasilios Pierrakeas operate Defendant Corporation as either an alter ego of themselves and/or fail to operate

Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

    a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

    b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c)  transferring assets and debts freely as between all Defendants,

    d)  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

    e)  operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

    f)  intermingling assets and debts of their own with Defendant Corporation,

    g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

    h)  Other actions evincing a failure to adhere to the corporate form.

45.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

46.    During 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

47.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the construction corporation on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

48.     Plaintiffs are former employees of Defendants who were employed mostly in projects in Manhattan as  construction laborers, brick layer workers, demolition workers, cement layer workers, and scaffold workers.

49.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Donal Magaliel Perez Molina*

50.     Plaintiff Perez was employed by Defendants from approximately July 15, 2019 until on or about August 30, 2019.

51.     Defendants employed Plaintiff Perez as a construction laborer.

52.     Plaintiff Perez regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

53.     Plaintiff Perez's work duties required neither discretion nor independent judgment.

54.     Throughout his employment with Defendants, Plaintiff Perez regularly worked in excess of 40 hours per week.

55.     From approximately July 15, 2019 until on or about August 30, 2019, Plaintiff Perez worked mostly at the 750 Park Avenue project from approximately 8:30 a.m. until on or about 5:15 p.m. to 5:20 p.m., 5 days a week (typically 43.75 to 44.15 hours per week).

56.     Throughout his employment, Defendants paid Plaintiff Perez his wages in cash.

57.    From approximately July 15, 2019 until on or about August 30, 2019, Defendants paid Plaintiff Perez $23.00 per hour.

58.    For approximately six weeks, Defendants did not pay Plaintiff Perez any wages for his work.

59.    Plaintiff Perez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

60.    For example, Defendants required Plaintiff Perez to work an additional 15 to 20 minutes past his scheduled departure time five days a week, and did not pay him for the additional time he worked.

61.    Plaintiff Perez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

62.    Defendants required Plaintiff Perez to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

63.    On a number of occasions, Defendants required Plaintiff Perez to sign a document, the contents of which he was not allowed to review in detail.

64.    Defendants took improper and illegal deductions from Plaintiff Perez's wages; specifically, Defendants deducted around $100 to $150 from Plaintiff Perez's bi-weekly wages.

65.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Perez regarding overtime and wages under the FLSA and NYLL.

66.    Defendants did not provide Plaintiff Perez an accurate statement of wages, as required by NYLL 195(3).

67.    Defendants did not give any notice to Plaintiff Perez, in English and in Spanish (Plaintiff Perez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

68.    Defendants required Plaintiff Perez to purchase "tools of the trade" with his own funds—including a harness, drillers, a hammer, special boots, helmets, and a variety of other construction tools.

*Plaintiff Felipe Flores Nicolas*

69.    Plaintiff Flores was employed by Defendants from approximately August 8, 2019 until on or about August 30, 2019.

70.    Defendants employed Plaintiff Flores as a construction laborer.

71.    Plaintiff Flores regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

72.    Plaintiff Flores's work duties required neither discretion nor independent judgment.

73.    Throughout his employment with Defendants, Plaintiff Flores regularly worked in excess of 40 hours per week.

74.    From approximately August 8, 2019 until on or about August 30, 2019, Plaintiff Flores worked mostly at the 750 Park avenue project from approximately 7:30 a.m. to 8:00 a.m. until on or about 4:30 p.m. to 5:00 p.m., 5 days per week (typically 42.5 to 45 hours per week).

75.    Throughout his employment, Defendants paid Plaintiff Flores his wages in cash.

76.    From approximately August 8, 2019 until on or about August 30, 2019, Defendants paid Plaintiff Flores $22.50 per hour.

77.    For approximately two weeks, Defendants did not pay Plaintiff Flores any wages for his work.

78.    Plaintiff Flores's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

79.    For example, Defendants required Plaintiff Flores to start working 30 minutes prior to his scheduled start time and continue working 30 minutes to an hour past his scheduled departure time 5 days a week, and did not pay him for the additional time he worked.

80.    Plaintiff Flores was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

81.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Flores regarding overtime and wages under the FLSA and NYLL.

82.    Defendants did not provide Plaintiff Flores an accurate statement of wages, as required by NYLL 195(3).

83.    Defendants did not give any notice to Plaintiff Flores, in English and in Tlapaneco (Plaintiff Flores's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

84.    Defendants required Plaintiff Flores to purchase "tools of the trade" with his own funds—including a harness and a variety of construction tools.

*Plaintiff Jesus Orellana*

85.    Plaintiff Orellana was employed by Defendants from approximately July 2019 until on or about September 28, 2019.

86.    Defendants employed Plaintiff Orellana as a brick layer.

87.    Plaintiff Orellana regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

88.    Plaintiff Orellana 's work duties required neither discretion nor independent judgment.

89.    From approximately July 2019 until on or about September 28, 2019, Plaintiff Orellana worked at the 750 Park Avenue project from approximately 8:30 a.m. until on or about 5:25 p.m., 5 days a week (typically 42.10 hours per week).

90.    Throughout his employment, Defendants paid Plaintiff Orellana his wages in cash.

91.    From approximately July 2019 until on or about September 28, 2019, Defendants paid Plaintiff Orellana $26.00 per hour.

92.    For approximately two weeks, Defendants did not pay Plaintiff Orellana any wages for his work;  in addition, defendants withheld $350 from one of Plaintiff Orellana's paychecks and $250 from Plaintiff Orellana's last paycheck..

93.    Plaintiff Orellana 's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

94.    For example, Defendants required Plaintiff Orellana to work an additional 25 minutes past his scheduled departure time 5 days a week, and did not pay him for the additional time he worked.

95.    Plaintiff Orellana was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

96.    Defendants required Plaintiff Orellana to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

97.    On a number of occasions, Defendants required Plaintiff Orellana to sign a document, the contents of which he was not allowed to review in detail.

98.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Orellana regarding overtime and wages under the FLSA and NYLL.

99.    Defendants did not provide Plaintiff Orellana an accurate statement of wages, as required by NYLL 195(3).

100.    Defendants did not give any notice to Plaintiff Orellana, in English and in Spanish (Plaintiff Orellana 's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

101.    Defendants required Plaintiff Orellana to purchase "tools of the trade" with his own funds—including a helmet, a harness, a hammer, levelers, four construction pants, and construction shoes.

*Plaintiff Julio Penaranda Astudillo*

102.    Plaintiff Penaranda was employed by Defendants from approximately August 2019 until on or about September 27, 2019.

103.    Defendants employed Plaintiff Penaranda as a demolition worker.

104.    Plaintiff Penaranda regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

105.    Plaintiff Penaranda's work duties required neither discretion nor independent judgment.

106.    Throughout his employment with Defendants, Plaintiff Penaranda regularly worked in excess of 40 hours per week.

107.    From approximately August 2019 until on or about September 22, 2019, Plaintiff Penaranda worked at the 750 Park Avenue location from approximately 8:30 a.m. until on or about 5:00 p.m., Mondays through Fridays (typically 40 hours per week).

108.   From approximately September 23, 2019 until on or about September 27, 2019, Plaintiff Penaranda worked from approximately 8:00 a.m. until on or about 5:30 p.m., Mondays through Fridays (typically 42.50 hours per week).

109.   Throughout his employment, Defendants paid Plaintiff Penaranda his wages in cash.

110.   From approximately August 2019 until on or about September 16, 2019, Defendants paid Plaintiff Penaranda $20.00 per hour.

111.   From approximately September 17, 2019 until on or about September 27, 2019, Defendants paid Plaintiff Penaranda $22.50 per hour.

112.   For approximately 92 hours, Defendants did not pay Plaintiff Penaranda any wages for his work.

113.   Plaintiff Penaranda was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

114.   On a number of occasions, Defendants required Plaintiff Penaranda to sign a document, the contents of which he was not allowed to review in detail.

115.   In addition, in order to get paid, Plaintiff Penaranda was required to sign a document in which Defendants misrepresented the hours that he worked per week.

116.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Penaranda regarding overtime and wages under the FLSA and NYLL.

117.   Defendants did not provide Plaintiff Penaranda an accurate statement of wages, as required by NYLL 195(3).

118.    Defendants did not give any notice to Plaintiff Penaranda, in English and in Spanish (Plaintiff Penaranda's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

119.    Defendants required Plaintiff Penaranda to purchase "tools of the trade" with his own funds—including a helmet, a hammer, a set of uniform pants, three shirts, and shoes.

*Plaintiff Marco Antonio Salvador Bernardino*

120.    Plaintiff Salvador was employed by Defendants from approximately June 2019 until on or about September 19, 2019.

121.    Defendants employed Plaintiff Salvador as a brick layer and demolition worker.

122.    Plaintiff Salvador regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

123.    Plaintiff Salvador's work duties required neither discretion nor independent judgment.

124.    Throughout his employment with Defendants, Plaintiff Salvador regularly worked in excess of 40 hours per week.

125.    From approximately June 2019 until on or about September 19, 2019, Plaintiff Salvador worked at Manhattan projects from approximately 8:00 a.m. until on or about 5:00 p.m. to 5:30 p.m., Mondays through Fridays (typically 42.50 to 45 hours per week).

126.    Throughout his employment, Defendants paid Plaintiff Salvador his wages in cash.

127.    From approximately June 2019 until on or about September 19, 2019, Defendants paid Plaintiff Salvador $17.50 per hour.

128.    For approximately three weeks, Defendants did not pay Plaintiff Salvador any wages for his work.

129.    Plaintiff Salvador's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

130.    For example, Defendants required Plaintiff Salvador to work an additional 15 to 30 minutes past his scheduled departure time five days a week, and did not pay him for the additional time he worked.

131.    Although Plaintiff Salvador was required to keep track of his time, Defendants required him to record fewer hours than he actually worked. As a result, Plaintiff Salvador was not compensated for all of the hours that he worked.

132.    In addition, in order to get paid, Plaintiff Salvador was required to sign a document in which Defendants misrepresented the hours that he worked per week.

133.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Salvador regarding overtime and wages under the FLSA and NYLL.

134.    Defendants did not provide Plaintiff Salvador an accurate statement of wages, as required by NYLL 195(3).

135.    Defendants did not give any notice to Plaintiff Salvador, in English and in Spanish (Plaintiff Salvador's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

136.    Defendants required Plaintiff Salvador to purchase "tools of the trade" with his own funds—including boots, a harness, a helmet, pants, shirts, a hammer, a measuring tape, metal cutters and a scaffolding permit.

*Plaintiff Segundo Carlos Pala Yuicela*

137.    Plaintiff Pala was employed by Defendants from approximately August 4, 2019 until on or about September 6, 2019.

138.    Defendants employed Plaintiff Pala as a brick and cement layer, demolition worker and scaffold worker.

139.    Plaintiff Pala regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

140.    Plaintiff Pala's work duties required neither discretion nor independent judgment.

141.    Throughout his employment with Defendants, Plaintiff Pala regularly worked in excess of 40 hours per week.

142.    From approximately August 4, 2019 until on or about September 6, 2019, Plaintiff Pala worked mostly in Manhattan projects from approximately 8:30 a.m. until on or about 5:20 p.m., Mondays through Fridays (typically 44.15 hours per week).

143.    Throughout his employment, Defendants paid Plaintiff Pala his wages in cash.

144.    From approximately August 4, 2019 until on or about September 6, 2019, Defendants paid Plaintiff Pala $22.50 per hour.

145.    For approximately one week and four and a half days, Defendants did not pay Plaintiff Pala any wages for his work.

146.    Plaintiff Pala's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

147.    For example, Defendants required Plaintiff Pala to work an additional 20 minutes past his scheduled departure time five days a week, and did not pay him for the additional time he worked.

148.    Plaintiff Pala was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

149.    On a number of occasions, Defendants required Plaintiff Pala to sign a document, the contents of which he was not allowed to review in detail.

150.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Pala regarding overtime and wages under the FLSA and NYLL.

151.    Defendants did not provide Plaintiff Pala an accurate statement of wages, as required by NYLL 195(3).

152.    Defendants did not give any notice to Plaintiff Pala, in English and in Spanish (Plaintiff Pala's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

153.    Defendants required Plaintiff Pala to purchase "tools of the trade" with his own funds—including boots, pants, shirts, a helmet, a level, a harness, gloves, glasses, masks, and a drill.

*Defendants' General Employment Practices*

154.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage and overtime compensation as required by federal and state laws.

155.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

156.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

157.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

158.     Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked.

159.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

160.     On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

161.     Defendants required Plaintiffs to sign a document that reflected inaccurate or false hours worked.

162.     Defendants paid Plaintiffs their wages in cash.

163.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

164.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

165.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

166.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

167.    Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

168.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

169.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

170.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been

subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

171.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

172.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

173.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

174.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

175.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

176.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

177.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

178.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

179.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

180.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

181.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

182.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

183.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

184.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

185.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

186.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

187.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

188.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

189.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

190.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

191.     Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

192.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

193.     Defendants failed to provide Plaintiffs with a written notice, in English, Spanish, and Tlapaneco (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

194.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

195.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

196.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

197.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

198.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

199.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

200.    Plaintiffs were damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

## OF THE NEW YORK LABOR LAW

201.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

202.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

203.    Defendants made unlawful deductions from Plaintiff Perez's wages; specifically, Defendants deducted around $100 to $150 from Plaintiff Perez's bi-weekly wages.

204.    The deductions made from Plaintiff Perez's wages were not authorized or required by law.

205.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiff Perez's wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

206.    Plaintiff Perez was damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

207.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

208.    Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

209.    Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)    Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(k)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(m)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages as applicable

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

January 25, 2021

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    _____/s/ Michael Faillace_____
Michal Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 3, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Donal Magaliel Perez Molina

Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     3 de Octubre del 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 3, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                              Felipe Flores Nicolas

Legal Representative / Abogado:       Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                                  3 de Octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 3, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jesus  Orellana

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      3 de octubre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

October 3, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Julio Penaranda Astudillo

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:              3 de octubre 2019

_Certified as a minority-owned business in the State of New York_

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 3, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                  Marco Antonio Salvador Bernardino

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:              M. S. B.

Date / Fecha:                   3 de Octubre del 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 3, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:               Segundo Carlos Pala  Yuicela

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:               3 de octubre 2019

*Certified as a minority-owned business in the State of New York*